IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CONEISHA L. SHERROD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action _____ |
| | § | |
| UNITED WAY WORLDWIDE, and | § | **JURY DEMANDED** |
| UNITED WAY OF TARRANT COUNTY, | § | |
| | § | |
| *Defendants.* | § | |

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiff Coneisha L. Sherrod presents her Complaint for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 and 29 U.S.C. §§ 1132, 1140.

## PARTIES

1. Sherrod is a citizen and resident of the United States, residing in Tarrant County, Texas.

2. United Way Worldwide is a New York corporation that does business in the state of Texas and does not maintain a registered agent with the Secretary of State of Texas. United Way Worldwide may be served with process by serving the Secretary of State of Texas at the James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701, who may serve United Way Worldwide at its principal place of business, 701 N. Fairfax Street, Alexandria, Virginia 22314.

3. United Way of Tarrant County is a Texas corporation and may be served by serving its registered agent, Benton Clark, at its registered address, 1500 N. Main Street, Suite 200, Fort Worth, Texas 76164.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a retaliation and discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1132, 1140.

## BACKGROUND FACTS

5. United Way Worldwide and United Way of Tarrant County retaliated against Sherrod because she gave information and was willing to testify about matters involving benefits and administration of benefits covered by ERISA and because Sherrod opposed Defendants denying persons the "right to make" contracts and denying the same "security of persons and property as is enjoyed by white citizens" in the United States as required by federal law. *See* 42 U.S.C. § 1981.

6. United Way Worldwide and its member United Way organizations have a mission statement that says, "United Way fights for the health, education, and financial stability of every person in every community."

7. United Way Worldwide and its member United Way organizations distribute money to partner organizations, such as the Catholic Charities, Meals on Wheels, the Women's Center, and Salvation Army.

8. United Way World Wide provides guidelines for the operations of local member organizations, such as United Way of Tarrant County.

9. United Way Worldwide monitors and oversees the operations of the member organizations, including United Way of Tarrant County.

10. United Way's brand is interdependent and connected with United Way Worldwide and its member organizations across the country.

11. United Way donors do not generally differentiate between United Way Worldwide and its member United Way organizations.

12. United Way Worldwide can call for the resignation of Board Members of United Way organizations, including United Way of Tarrant County.

13. United Way Worldwide will call for the resignation of Board Members of organizations like United Way of Tarrant County if there is a risk that people in Tarrant County are not getting the services they need because the management team and the organization itself has lost the trust and confidence of the community.

14. United Way of Tarrant County has about 40 board members who are almost all white.

15. United Way of Tarrant County discontinues eligibility for its pension benefits.

16. United Way of Tarrant County sets up a special trust fund, called a Rabbi Trust, for executives to defer the taxability of compensation.

17. United Way of Tarrant County also sets up and sponsors an ERISA 403(b) plan to allow all employees to save and invest money in tax deferred accounts.

18. An ERISA 403(b) plan is similar to a 401k plan but it is for non-profit organizations.

19. United Way of Tarrant County is the administrator of the employees' 403(b) plan.

20. United Way of Tarrant County selects Mutual of America Life Insurance Company to invest the employees' money in the 403(b) plan.

21. United Way of Tarrant County hires a new Vice-President of Human Resources after the previous one retires.

22. United Way of Tarrant County's Chief Executive Officer tells the new VP of HR that he is retiring in about four years and that his replacement has already been selected.

23. United Way of Tarrant County's CEO tells the VP of HR that his replacement will be the person who was the Senior Vice-President of Resource Development and Chief Development Officer at the time.

24. United Way of Tarrant County and its CEO receive information from United Way of Tarrant County's VP of HR that she has discovered that United Way of Tarrant County has failed to pay all of the benefits to employees as required under the special trust fund and the 403(b) plan and has failed to comply with federal reporting requirements.

25. United Way of Tarrant County and its CEO express frustration with the Vice-President of HR for notifying them of the failure to pay benefits and the failure to follow the reporting requirements.

26. United Way of Tarrant County's CEO hears the VP of HR say that the investments of the employees' money in the 403(b) plan are not being managed well by Mutual of America Life Insurance Company.

27. United Way of Tarrant County's CEO tells the VP of HR that a comparison of Mutual of America Life Insurance Company with other benefit companies will be considered later.

28. United Way of Tarrant County's Senior Vice President of Community Development expresses interest in the CEO position to the VP of HR.

29. United Way of Tarrant County's CEO tells the VP of HR that the decision to replace him with the Senior VP of Resource Development after he retires had not been announced to the employees and the position had not been posted for others to apply.

30. United Way of Tarrant County's CEO hears the VP of HR express concern that proper protocols for selecting his replacement need to be followed to avoid a violation of the discrimination laws.

31. United Way of Tarrant County's CEO hears the VP of HR say that the qualifications listed on the resume of the Senior VP of Community Development, who is African-American, are clearly better than the qualifications listed on the resume of the Senior VP of Resource Development, who is white.

32. United Way of Tarrant County creates a planning committee of Board Members to select a successor CEO and eliminates the VP of HR from the selection process.

33. United Way of Tarrant County receives a complaint from the Senior VP of Community Development that United Way is discriminating against her based on her race.

34. United Way of Tarrant County's VP of HR begins to investigate the race discrimination complaint and finds some merit to the claim.

35. United Way of Tarrant County, its Chairmen of the Board, and its CEO exclude the VP of HR, who is African-American, from continuing to fully participate in the investigation of the complaint.

36. United Way of Tarrant County's Senior VP of Resource Development resigns her employment.

37. United Way of Tarrant County settles the complaint by increasing the Senior VP of Community Development's pay.

38. United Way of Tarrant County promotes the Senior VP of Community Development to Executive Vice-President of Community Development and Chief Impact Officer.

39. United Way of Tarrant County has over 40 partners, such as the Catholic Charities, Meals on Wheels, and the Salvation Army, that receive money from United Way of Tarrant County.

40. United Way of Tarrant County tells its partners that it will be giving less money to them because the level of donations is down.

41. United Way of Tarrant County's CEO sends a letter to the partners that employees at United Way of Tarrant County will not be receiving raises because the donations are lower.

42. United Way of Tarrant County hires a white male as Chief Operating Officer and Chief Development Officer.

43. United Way of Tarrant County, its Chairman of the Board, and its CEO tell the white male, at the time he is hired, that he will be the CEO when the current CEO retires.

44. United Way of Tarrant County's Chairman of the Board instructs that the current CEO is to receive a raise.

45. United Way of Tarrant County's Chairman of the Board hears the VP of HR tell him she is concerned about the raise because the CEO sent letters to the partner agencies that employees will not be receiving raises at this time.

46. United Way of Tarrant County's Chairman of the Board expresses frustration to the VP of HR for raising the concern.

47. United Way of Tarrant County's Board Members approve the raise for the current CEO.

48. United Way of Tarrant County receives another complaint by the Executive VP of Community Development about race discrimination and retaliation because she did not receive a raise when she was promoted to Executive VP, because she was not told about the opportunity given to the white male, and because she was not considered for the CEO position.

49. United Way of Tarrant County and its current CEO ask the VP of HR to meet with United Way of Tarrant County's attorneys concerning the new complaints by the Executive VP of Community Development.

50. United Way of Tarrant County's CEO says that if the Executive VP of Community Development brings litigation that it would be the kiss of death of her employment with United Way.

51. United Way of Tarrant County's CEO and its attorneys say that if another settlement is made with the Executive VP of Community Development, the termination of her employment must be a part of the settlement.

52. United Way of Tarrant County's CEO hears the VP of HR say that they know that the promotion of the Executive VP was not part of the settlement and that United Way of Tarrant County should not make that legal argument against the Executive VP.

53. United Way of Tarrant County's Board elects a new Chairman of the Board.

54. United Way of Tarrant County's CEO hears the VP of HR express concern again about Mutual of America Life Insurance Company.

55. United Way of Tarrant County's CEO agrees to consider whether another company could invest the employees' money other than Mutual of America Life Insurance Company.

56. United Way of Tarrant County is sued by the Executive VP for race discrimination and retaliation.

57. United Way of Tarrant County's Compensation Committee schedules a meeting.

58. United Way of Tarrant County's CEO tells the VP of HR before she goes into the meeting that the newly elected Chairman of the Board can be abrasive and to just take it.

59. United Way of Tarrant County's newly elected Chairman of the Board tells the VP of HR in front of the Compensation Committee and the past Chairman of the Board that someone more qualified and experienced was needed in the VP of HR position.

60. United Way of Tarrant County agrees that Mutual of America Life Insurance Company needs to be replaced with another company.

61. United Way of Tarrant County's VP of HR receives complaints from four women complaining about the Finance Manager's treatment of them.

62. United Way of Tarrant County's COO tells the VP of HR that she does not have necessary skills to investigate discrimination or retaliation complaints.

63. United Way of Tarrant County's COO tells the VP of HR that the COO himself will conduct the investigation of the complaints because he said that the complainers were out to get the finance manager.

64. United Way Worldwide receives a complaint from the VP of HR that United Way of Tarrant County is violating discrimination and retaliation laws against her and others.

65. United Way of Tarrant County's assistant to the COO schedules a meeting between the COO and the VP of HR.

66. United Way of Tarrant County's VP of HR contacts the Fort Worth division of the EEOC to report discrimination and retaliation.

67. United Way of Tarrant County's CEO hears the VP of HR say that the COO has breached the confidentiality of the employees' complaints and that she has contacted the Fort Worth division of the EEOC.

68. United Way of Tarrant County's CEO tells the VP of HR that he will discuss the matter with the COO.

69. United Way of Tarrant County's assistant to the COO sends an email to the VP of HR cancelling the meetings.

70. United Way of Tarrant County terminates the employment of the VP of HR in an email from the COO the day after she reported the discrimination and retaliation to the EEOC and the CEO.

71. United Way of Tarrant County says that the VP of HR is being terminated for not appearing for meetings.

72. United Way Worldwide's Director of Membership Accountability hears the former VP of HR tell about her treatment, the termination, and the cancelling of the meetings.

73. United Way Worldwide's Director of Membership Accountability tells the former VP of HR that that she was not being treated properly, that she should be

protected as a whistleblower, and that United Way Worldwide would investigate the matter.

74. United Way Worldwide's Director of Membership Accountability gets the former VP of HR's permission to tell the attorneys for United Way Worldwide about what has been happening.

75. United Way Worldwide's Director of Membership Accountability calls the former VP of HR back and tells her in a trembling voice that United Way Worldwide will not help the VP of HR.

76. United Way of Tarrant County settles with the Executive VP who agrees to resign.

77. United Way of Tarrant County's CEO retires.

78. United Way of Tarrant County makes the COO the new CEO.

79. United Way of Tarrant County's VP of HR is Sherrod.

## CAUSES OF ACTION

**Section 1981 Violation**

80. Sherrod's claim for recovery under Section 1981 is based upon a 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. This law entitles a person of color to equal opportunity and treatment in employment. Thus, when an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

81. A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

82. United Way Worldwide and United Way of Tarrant County violated the federal statute by intentionally discriminating and retaliating against Sherrod; and, as a direct result of the discrimination and retaliation caused damages to Sherrod.

**ERISA Violation**

83. Section 510 of the ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to [the Employee Retirement Income Security Program] or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. United Way Worldwide and United Way of Tarrant County violated Section 510 of ERISA by discharging, suspending, expelling, or discriminating against Sherrod because she gave information and was willing to testify about violations of ERISA related to employee benefit plans.

84. Section 502 of ERISA provides that a participant, beneficiary, or fiduciary may bring an action to enforce rights under benefit plans, clarify rights to future benefits, and for appropriate relief including to enjoin any act or practice which violates a provision of ERISA, to obtain other appropriate equitable relief, to redress the violations, or to enforce any provisions ERISA or the terms of the plan.

**Compensatory and Equitable Relief**

85.    Sherrod sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, for which she is entitled to recovery under her causes of action. Sherrod is also entitled to declaratory relief that a violation has occurred and to equitable relief in the form of reinstatement or an injunction against future discrimination or retaliation.

**Exemplary Damages**

86.    Sherrod is also entitled to receive punitive damages because United Way Worldwide and United Way of Tarrant County engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

**Attorney's Fees**

87.    Sherrod is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

## JURY DEMAND

88.    Sherrod requests a trial by jury to the extent allowed by law.

WHEREFORE, Sherrod requests that United Way Worldwide and United Way of Tarrant County answer and that on final trial, Sherrod have judgment against United Way Worldwide and United Way of Tarrant County for compensatory, declaratory, equitable, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which she may be entitled.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David B. Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF
CONEISHA SHERROD**