## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CONEISHA L. SHERROD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:17 cv-00758-O** |
| | § | |
| **UNITED WAY OF TARRANT COUNTY,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David B. Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF**
**CONEISHA SHERROD**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

I. Legal Standard ........................................................................................... 1

II. Arguments, Authorities, and Summary Judgment Evidence ................................ 2

    A. United Way's favorable treatment of other African Americans
    is irrelevant ........................................................................................... 2

    B. Ms. Sherrod has direct and indirect proof of discrimination ........................... 3

    C. Mr. Smyers's declaration admits direct evidence of retaliation ...................... 4

    D. A reasonable jury may infer discrimination and retaliation
    from pretext ........................................................................................... 4

    E. Ms. Sherrod presents evidence for a reasonable jury to consider
    United Way's reasons to be unworthy of credence ...................................... 6

        1. Ms. Sherrod presents evidence that she did not
        repeatedly refuse to meet with her manager ...................................... 7

        2. Ms. Sherrod presents evidence that the allegation that
        Mr. Smyers concluded they would not be able to work together
        is discriminatory and not legitimate ............................................. 11

    F. Mr. Smyer's knowledge of an EEOC claim may be established
    by circumstantial evidence ...................................................................... 14

    G. A jury could find United Way negligent in preventing
    discrimination and retaliation .................................................................. 17

    H. Rule 56(d) requires a denial or delay of the motion ................................... 17

PRAYER ..................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ...................................................................................................... 1

*Brown v. Henderson,*
   257 F.3d 246 (2d Cir. 2001)......................................................................................... 3

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,*
   482 F.3d 408 (5th Cir. 2007) ...................................................................................... 5

*City of Los Angeles, Dep't of Water and Power v. Manhart,*
   435 U.S. 702 (1978) ...................................................................................................... 3

*Conn. v. Teal,*
   457 U.S. 440 (1982) ...................................................................................................... 3

*Dey v. Colt Constr. & Dev. Co.,*
   28 F.3d 1446 (7th Cir. 1994) ...................................................................................... 15

*Diaz v. Kraft Foods Global, Inc.,*
   653 F.3d 582 (7th Cir. 2011) .................................................................................. 2, 3

*EEOC v. Eagle Mgmt. Group,*
   No. 1:05-cv-1215-WBH/AJB, 2006 WL 8435746 (N.D. Ga. Sept. 18, 2006).......... 15

*EEOC v. EmCare, Inc.,*
   857 F.3d 678 (5th Cir. 2017) ...................................................................................... 15

*Goldsmith v. City of Atmore,*
   996 F.2d 1155 (11th Cir. 1993) ................................................................................. 15

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,*
   850 F.3d 731 (5th Cir. 2017) ...................................................................................... 2

*Heinsohn v. Carabin & Shaw, P.C.,*
   No. 15-50300, 2016 WL 4011160 (5th Cir. July 26, 2016)....................................... 6

*Jefferies v. Harris Cnty. Cmty. Action Ass'n,*
   615 F.2d 1025 (5th Cir. 1980) ................................................................................... 15

*Martinez v. El Paso Cnty.,*
   710 F.2d 1102 (5th Cir. 1983) ................................................................. 5

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ......................................................................... 5

*Medina v. Ramsey Steel Co.,*
   238 F.3d 674 (5th Cir. 2001) ............................................................... 14

*Mulhall v. Ashcroft,*
   287 F.3d 543 (6th Cir. 2002) ............................................................... 15

*Passaic Valley Sewerage Comm'rs v. United States Dep't of Labor,*
   992 F.2d 474 (3d Cir. 1993) ............................................................... 14

*Poole v. City of Shreveport,*
   691 F.3d 624 (5th Cir. 2012) ................................................................. 1

*Ramirez v. Sloss,*
   615 F.2d 163 (5th Cir. 1980) ................................................................. 5

*Reeves v. Sanderson Plumbing Prods., Inc.,*
   530 U.S. 133 (2000) ................................................................. 2, 5, 11

*Sandstad v. CB Richard Ellis, Inc.,*
   309 F.3d 893 (5th Cir. 2002) ................................................................. 3

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502 (1993) ......................................................................... 6

*Tex. Dep't of Cmty. Affairs v. Burdine,*
   450 U.S. 248 (1981) ......................................................................... 5

*U.S. Postal Serv. Bd. of Governors v. Aikens,*
   460 U.S. 711 (1983) ....................................................................... 3, 4

*Vance v. Ball State Univ.,*
   570 U.S. 421 (2013) ....................................................................... 17

*Walther v. Lone Star Gas Co.,*
   952 F.2d 119 (5th Cir. 1992) ................................................................. 2

*West v. Nabors Drilling USA, Inc.,*
   330 F.3d 379 (5th Cir. 2003) ................................................................. 3

*Wichman v. Bd. of Trs. of S. Ill. Univ.*,
   180 F.3d 791 (7th Cir. 1999) ........................................................................... 6

<u>Rules</u>

FED. R. CIV. P. 56(a) ........................................................................................... 1

Federal Rule of Civil Procedure 56(d) .......................................................... 17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CONEISHA L. SHERROD, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Civil Action No. 4:17 cv-00758-O |
| | § | |
| UNITED WAY OF TARRANT COUNTY, | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE REED O'CONNOR:

Plaintiff Coneisha L. Sherrod responds to Defendant United Way of Tarrant County's ("United Way") motion for summary judgment with facts, arguments, authorities, and an appendix to support a denial of the motion.

## I.  Legal Standard

For a motion for summary judgment to be granted, the movant must show "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

In considering the evidence to determine a motion for summary judgment, courts must draw all reasonable inferences in favor of the nonmoving party; not

make any credibility determinations or weigh the evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent the evidence comes from disinterested witnesses. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

## II.   Arguments, Authorities, and Summary Judgment Evidence

### A.   United Way's favorable treatment of other African-Americans is irrelevant.

Ms. Sherrod's claims that United Way discriminates against employees based on race. As a defense, United Way argues that it does not discriminate on the basis of race because it treats some African-Americans, such as Leah King and Beverly Boyd, exceptionally well. The argument is based on a false dichotomy.

The relevant issue in an unlawful discrimination case is the treatment of a person as compared with those outside the person's protected class, not the relative treatment of persons within the protected class. The law does not provide a "token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587–88 (7th Cir. 2011); *see also Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992). A court errs if it places great weight on evidence that the employer treated others in the protected class fairly. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 (5th Cir. 2017), as revised (Mar. 13, 2017).

An employer does not have a "license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Conn. v. Teal,* 457 U.S. 440, 455 (1982); *see also City of Los Angeles, Dep't of Water and Power v. Manhart,* 435 U.S. 702, 708–09 (1978); *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001).

Anti-discrimination statutes "would have little force if an employer could defeat a claim of discrimination by treating a single member of the protected class in accordance with the law." *Diaz,* 653 F.3d at 587. Evidence that United Way favorably treated another African-American employee is not dispositive at the summary judgment stage to warrant judgment for the employer as a matter of law. *See id.*

**B.    Ms. Sherrod has direct and indirect proof of discrimination.**

A jury may consider proof of discrimination or retaliation either by direct evidence or by circumstantial evidence. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied,* 539 U.S. 926 (2003)).

Circumstantial evidence may be proved with a *McDonnell Douglas* formula of presenting a *prima facie* case and overcoming any stated reasons for the adverse action by showing that they are pretext. *U.S. Postal Serv. Bd. of Governors v.*

*Aikens*, 460 U.S. 711, 714-15 (1983). United Way addresses circumstantial evidence without discussing direct evidence.

## C. Mr. Smyers's declaration admits direct evidence of retaliation.

United Way's summary judgment evidence acknowledges that it terminated Ms. Sherrod for reporting discrimination. Mr. Smyers states that he learned from Mr. McKinney that Ms. Sherrod met with Mr. McKinney to complain about him and had written a lengthy summary taking him to task for involving himself in the finance investigation. (Def. App. 3; ¶19). The lengthy summary includes a complaint of discrimination. (Def. App. 19). This is the last act by Ms. Sherrod that Mr. Smyers lists as objectionable to him. He then acknowledges, "Given all that transpired, on March 3, 2018, I decided to terminate Ms. Sherrod's employment." (Def. App. 3; ¶19). The admission is proof of discriminatory animus without inference or presumption. A reasonable jury could conclude, without relying on any inferences, that United Way terminated Ms. Sherrod for reporting discrimination. On this evidence alone, the motion for summary judgment as to Ms. Sherrod's Section 1981 retaliation claim should be denied.

## D. A reasonable jury may infer discrimination and retaliation from pretext.

Because employers will rarely admit to discriminatory or retaliatory treatment, proof may be in the form of indirect or circumstantial evidence. *See Aikens*, 460 U.S. at 716 (noting that employees are seldom able to obtain direct evidence in discrimination cases; evidence of the employer's discriminatory attitude in general is relevant and admissible to prove discrimination). Racial discrimination

is not tolerated, subtle or otherwise. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801 (1973). In short, the factfinder must decide which party's explanation of the employer's motivation it believes. *Martinez v. El Paso Cnty.,* 710 F.2d 1102, 1105 (5th Cir. 1983).

United Way does not dispute, for the purpose of its motion for summary judgment, the existence of the elements of a *prima facie* case under the *McDonnell Douglas* test. (ECF No. 43, p. 7). The elements of the *prima facie* case create a rebuttable inference of intentional employment discrimination or retaliation. *See Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir. 1980); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Ms. Sherrod moved separately for a partial summary judgment on her *prima facie* cases. (ECF No. 38).

Because United Way concedes the *prima facie* cases, at least for the purpose of its motion for summary judgment, the issue remaining is whether Ms. Sherrod offers sufficient evidence to create a genuine issue of material fact either that (1) United Way's stated reason for her termination is a pretext or (2) that its reason, while true, is only one reason for firing her in addition to her race. *See Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

A jury may determine that the "proffered explanation is unworthy of credence." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). In other words, a false or weak reason cannot be

advanced to hide the actual reason. *Heinsohn v. Carabin & Shaw, P.C.*, No. 15-50300, 2016 WL 4011160, at \*7 (5th Cir. July 26, 2016).

In the context of a garden variety motion for summary judgment, when there has been no trial, a genuine issue of material fact as to pretext precludes summary judgment. *See Heinsohn*, 2016 WL 4011160, at \*7. The fact finder may determine that an employer's reasons are pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."); *see also Wichman v. Bd. of Trs. of S. Ill. Univ.*, 180 F.3d 791, 805 (7th Cir. 1999) *vacated on other grounds*, 528 U.S. 1111 ("[A] defendant cannot escape the fact that a jury must use its good common sense in addressing how much, if at all, the foolishness or unfairness of the employer's decision weighs in the evidence of pretext.").

## E.     Ms. Sherrod presents evidence for a reasonable jury to consider United Way's reasons to be unworthy of credence.

United Way's alleged reasons for terminating Ms. Sherrod are 1) insubordination by repeatedly refusing to meet with her manager, Mr. Smyers; and 2) Smyers concluded they would not be able to work together. (ECF No. 43, p. 8). Ms. Sherrod presents evidence that each of these are not credible or legitimate.

### 1.    Ms. Sherrod presents evidence that she did not repeatedly refuse to meet with her manager.

Ms. Sherrod disputes the allegation that she delayed, missed or avoided any meetings with her manager, Mr. Smyers. (Resp. Appx. 23, ¶ 43). She testifies that during the last week of her employment, she was in a meeting called by Mr. Smyers on February 27, 2017; she was in a meeting called by Mr. Smyers March 1, 2017; she was prepared to meet with Mr. Smyers on March 2, 2017, although the meeting was cancelled by Beverly Boyd due to his scheduling conflicts; and voluntarily offered additional dates to schedule meetings with Mr. Smyers on February 28, 2017. (Resp. Appx. 23, ¶ 43).

Ms. Sherrod testifies that at all times, she attempted to make herself more than reasonably available to meet with Mr. Smyers. (Resp. Appx. 18, ¶ 24). She even sent an email with available dates and times. He responded without providing any dates. (Resp. Appx. 18, ¶ 24).

Ms. Sherrod testifies that during the week of her termination, the week that Mr. Smyers claims that she refused to meet with him, she attended two meetings with Mr. Smyers. (Resp. Appx. 19, ¶ 25). Two meetings that Mr. Smyers arranged and scheduled. (Resp. Appx.19, ¶ 25).

Ms. Sherrod disputes that she cancelled any meetings with Mr. Smyers. (Resp. Appx. 19, ¶ 26). On February 27, 2017 at 2 p.m. CST, she attended a NE Game Planning meeting with other executive team members, scheduled by Mr. Smyers during the same time period as Mr. Smyers and her pre-scheduled monthly one on one meetings. (Resp. Appx. 19, ¶ 26).

Immediately following the NE Game Planning meeting on February 27, 2017, Ms. Sherrod emailed Ms. Boyd and Mr. Smyers to advise them of the overlapping meetings scheduled. (Resp. Appx. 19, ¶ 27). Mr. Smyers responded to her email on February 27, 2017 and stated, "Let's coordinate a new time soon, please." (Resp. Appx. 19, ¶ 27).

On February 28, 2017, Ms. Sherrod provided Mr. Smyers and Ms. Boyd with available meeting times starting from Thursday, March 2, 2017 to Wednesday, March 8, 2017. (Resp. Appx. 19, ¶ 28). On February 28, 2017, Ms. Boyd responded to her email and stated she would schedule a meeting with Mr. Smyers and Ms. Sherrod on Thursday, March 2, 2017 at 1:45 p.m. CST. (Resp. Appx. 19, ¶ 28). In addition, Ms. Boyd stated that Mr. Smyers would need to leave the office by 3:00 p.m. CST to travel to Dallas. (Resp. Appx. 19, ¶ 28). Ms. Sherrod accepted the appointment for the meeting on Thursday, March 2, 2017 at 1:45 p.m. CST. (Resp. Appx. 19, ¶ 28).

Ms. Sherrod had been scheduled for a meeting for a Strategic Planning meeting with Board Members and the Executive Team, including Mr. Smyers for February 28, 2017. (Resp. Appx. 20, ¶ 29). She was uninvited to that meeting, although she was a part of the Executive Team. (Resp. Appx. 20, ¶ 29).

On the next day, Wednesday, March 1, 2017, Ms. Sherrod attended an Executive Team meeting, which included Mr. Smyers, debriefing the Strategic Planning meeting that occurred on February 28, 2017, to which she had been uninvited. (Resp. Appx. 20, ¶ 30).

On the morning of Thursday, March 2, 2017, Ms. Boyd came to Ms. Sherrod's office and stated that she needed to cancel Ms. Sherrod's meeting with Mr. Smyers for that day. (Resp. Appx. 20, ¶ 31). Ms. Sherrod did not cancel the meeting. Ms. Boyd did. (Resp. Appx. 20, ¶ 31). When Ms. Boyd asked if Ms. Sherrod could meet the next day, Ms. Sherrod reminded her she would be on vacation on the next day, Friday, March 3, 2017. (Resp. Appx. 20, ¶ 31). No one told or asked Ms. Sherrod to cancel her vacation day of March 3, 2017. (Resp. Appx. 20, ¶31).

Ms. Sherrod disputes the fact that Mr. Smyers did not have the ability to meet with her during the week of February 27, 2017, as they were in multiple meetings together during that week. (Resp. Appx. 23, ¶ 45). In addition, Mr. Smyers had her direct cell phone number and had utilized this number in the past to contact her directly while out of the office. (Resp. Appx. 23, ¶ 45).

In addition, because Ms. Sherrod did not have a history of missing/avoiding meetings, disciplinary actions, or performance issues, Mr. Smyers could have waited until the following business day, Monday, March 6, 2017, to meet with her directly. (Resp. Appx. 24, ¶46). The reasons alone provided for Ms. Sherrod's termination without any kind of formal notice, would not have normally progressed into immediate termination. (Resp. Appx. 24, ¶ 46).

The reasons provided would not be considered an emergency act; no employee was in danger; and Mr. Smyers was aware that Ms. Sherrod would have returned to the office on Monday, March 6, 2017 because she responded to a prior email sent by Beverly Boyd on February 28, 2017 to the entire executive team stating her agenda

items for the Monday, March 6, 2017 executive team meeting. (Resp. Appx. 24, ¶ 47). The practice at United Way in the past did not include terminating staff without a history of disciplinary actions, warnings, or performance issues documented. (Resp. Appx. 24, ¶ 48).

United Way claims that if Ms. Boyd incorrectly informed Mr. Smyers that Ms. Sherrod had cancelled a meeting on March 6, 2017, then the termination was based upon a mistake and not for discrimination or retaliation. A reasonable jury is free to disregard this testimony as the true reason. A jury, viewing the evidence in a light favorable to Ms. Sherrod could reasonably believe that Chief of Operations would not terminate a Vice President of Human Resource over the cancellation of a single meeting, especially without discussing the matter personally with the Vice President. A jury could consider that the COO did not follow progressive discipline policies, especially for such a minor infraction.

For further support of pretext, a jury could consider that the claim that the Vice President repeatedly refused to meet with the COO is false, and is now incredibly claiming that the termination is over a mistake by the COO's assistant concerning the cancellation of a single cancellation. Even more so, a jury could reasonably consider other circumstances in context such as the COO's admitted animosity at the Vice President's opposition and report of the COO's discrimination and retaliation.

A reasonable jury could also consider the testimony of the fear of Ms. Boyd, the assistant, who has said on several occasions that Mr. Smyers was a racist.

(Resp. Appx. 38, ¶ 18). A jury could perceive that Ms. Boyd would be motivated to collude or cooperate with Mr. Smyers in her testimony from fear of suffering the same fate as Ms. Sherrod.

United Way makes an issue of not responding to a late-night email from Mr. Smyers on March 2, 2017. The email was sent after hours and Mr. Smyers knew that the next day Ms. Sherrod would be out on vacation. (Resp. Appx. 24, ¶ 48).

Blaming Ms. Sherrod for not responding to an email on her time off is evidence of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 145 (2000) ("[Plaintiff] also testified that, on the day he was fired, Chesnut said that his discharge was due to his failure to report as absent one employee, Gina Mae Coley, on two days in September 1995. . .But [plaintiff] explained that he had spent those days in the hospital, and that Caldwell was therefore responsible for any overpayment of Coley."). A reasonable jury could see not only pretext but a set up.

Considering the evidence in a light most favorable to Ms. Sherrod, a reasonable jury could find that terminating Ms. Sherrod for insubordination by repeatedly refusing to meet with Mr. Smyers is not worthy of credence.

**2.      Ms. Sherrod presents evidence that the allegation that Mr. Smyers concluded they would not be able to work together is discriminatory and not legitimate.**

Mr. Smyers states that he observed Ms. Sherrod act disrespectfully to Mr. McKinney. (Def. App. 3, ¶ 20). Ms. Sherrod disputes this alleged fact and states that she never acted in a disrespectful manner to Mr. McKinney. This is supported by the testimony of Pauline Ramos, another Vice President at United Way, who

observed that Ms. Sherrod always acted cordially and professionally, including in her observations of meetings with Mr. McKinney. (Resp. Appx. 44-45, ¶ 6). A reasonable jury could believe Ms. Sherrod over Mr. Smyers.

Mr. Smyers ties his inability to work with Ms. Sherrod to her failure to meet with him. He states, "It was clear to me that if I could not get Ms. Sherrod to simply meet with me to discuss our working and reporting relationship, there was no way we would be able to work together on the restructure plans." (Def. App. 3, ¶ 20). Ms. Sherrod testifies that she was willing to meet with Mr. Smyers, that he was the one who cancelled meetings, not her; and that in fact, she met with Mr. Smyers two times the week of her termination. (Resp. Appx. 19, ¶ 25). A reasonable jury could believe Ms. Sherrod over Mr. Smyers and conclude that the reason is pretext for Mr. Smyers not wanting to continue to work with Ms. Sherrod because of unlawful discrimination and retaliation.

Mr. Smyers's offense at Ms. Sherrod's use of the word insertion is evidence of pretext, and retaliation itself. Best practices for a workplace investigation dispute is that the investigation would be conducted by an employee in the human resource department who is seen as a neutral third party. (Resp. Appx. 47, ¶ 4). Further, the lack of protection for confidentiality is a proper concern. (Resp. Appx. 47, ¶¶ 5-6). Best practices dictate that the investigator inform and advise superiors of the investigation. (Resp. Appx. 48, ¶ 8). If a person of authority outside of the human resource department inserts himself or herself into the investigation as a lead investigator, there will be a question if that action is justified or necessary. (Resp.

Appx. 48, ¶ 8). If the person inserting himself or herself as the lead investigator shows bias or indicates that he or she is not going to neutral, then the integrity of the investigation will be compromised. (Resp. Appx. 48, ¶ 9). The removal of the human resource investigator may also affect confidence, moral, and trust. (Resp. Appx. 48, ¶ 11). If an executive loses confidence in a human resource professional's investigation, he or she should seek a qualified third party to continue the investigation, unless the executive has human resource training or experience in human resource related investigations and has not shown any bias or lack of neutrality. (Resp. Appx. 48, ¶ 12). A human resource professional who observes that protocols are not being followed, should be able to raise their concerns to any manager or executive of the organization in accordance with the company policy without fear of retaliation. (Resp. Appx. 49, ¶ 13). A reasonable jury may conclude that Ms. Sherrod's concerns were appropriate, as was the use of the word insertion and that Mr. Smyers's objection to Ms. Sherrod's complaint was unlawful retaliation.

Evidence of pretext may include code words and personality issues in retaliation cases. When these words and issues suddenly arise after an employee makes a protected report, they may be viewed as subterfuge for illegal motives. The Administrative Review Board explained in a whistleblower case:

> Vague and subjective reasons about personality issues may also suggest that they are pretextual or in reality complaints about whistleblowing. *See, e.g., Dodd v. Polysar Latex*, 1988-SWD-004, slip op. at 8 (Sec'y Sept. 22, 1994) (supervisor claimed that he recommended termination after considering complainant's

deteriorating relationships, attitude, and performance, but his testimony taken as a whole showed that he recommended termination solely because of complainant's conflict with another manager over complainant's protected complaints); *Timmons v. Franklin Elect. Coop.*, 1997-SWD-002, slip op. at 6 (ARB Dec. 1, 1998) (employer's expectation that an employee be a 'team player' to a point where it interferes with protected activity is prohibited); *Passaic Valley Sewerage Comm'rs v. United States Dep't of Labor*, 992 F.2d 474, 481 (3d Cir. 1993) (the alleged 'personality' problem or deficiency of interpersonal skills was 'reducible' to the problem of the inconvenience caused by the employee's pattern of complaints).

*Riess v. Nucor Corp.—Vulcraft-Tex., Inc.*, ARB No. 08-137, at 6 (ARB Nov. 20, 2010).

Mr. Smyers admits that part of the reason he cannot work with Ms. Sherrod is because he met with Mr. McKinney to complain about him and the complaint included discrimination and violation of procedures related to investigations of complaints that included discrimination. The reason must be a legitimate non-discriminatory reason. This reason is discriminatory and therefore not legitimate. It does not satisfy the burden necessary to rebut the *prima facie* case.

Finally, as Mr. Price testifies, Mr. Smyers displayed racial animus. (Resp. Appx. 37-38, ¶ 9). A reasonable jury may include Mr. Smyers's public display of contempt for opposition to racial discrimination and support for retaliation against those who might oppose race discrimination as part of the totality of the circumstances.

**F.    Mr. Smyers's knowledge of an EEOC claim may be established by circumstantial evidence.**

Mr. Smyers alleges that he did not know about Ms. Sherrod's complaint to the EEOC. (Def. App. 3, ¶ 22). This is a fact issue that to rebuts the *prima facie* case of retaliation rather than pretext. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674,

684 (5th Cir. 2001) (quotation marks and internal cites omitted) (A "causal link" is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity.).

Because United Way has conceded the *prima facie* case, a presumption exists that it retaliated because she made a report to the EEOC. Lack of knowledge would be relevant to the *prima facie* element of opposition or participation. United Way cannot concede the *prima facie* case and deny it at the same time. United Way knew about the report. United Way terminated her one day later. Nevertheless, "A decisionmaker's awareness may be established by circumstantial evidence." *EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

In the latter part of February 2017, Ms. Sherrod and others met with a United Way board member to discuss problems with discrimination and retaliation. (Resp. Appx. 14, ¶ 2). On March 2, 2017, Ms. Sherrod informed Mr. McKinney that she had met with the Fort Worth Human Relations Commission to file an EEOC charge of discrimination and retaliation. (Resp. Appx. 2-3, ¶ 10; 21, ¶¶ 35-36). Informing her employer that she was in the process of filing or intended to file an EEOC charge is protected activity. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1035 (5th Cir. 1980); *EEOC v. Eagle Mgmt. Group*, No. 1:05-cv-1215-WBH/AJB, 2006 WL 8435746, at *8 (N.D. Ga. Sept. 18, 2006) ("[B]ecause employees should not be bullied out of filing E.E.O.C. charges . . . there is little difference

between the actual filing and the stated intent thereto."); *see also,* EEOC Enforcement Guidance on Retaliation and Related Issues, § II.A.3. Range of Individuals Who Engage in Protected Activity, and n.92, https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm#3._Range (last visited Sept. 7, 2018).

Mr. McKinney stated at the end of the meeting with Ms. Sherrod on March 2, 2017, that he would speak to Mr. Smyers and would deal with the issues upon his return on March 3, 2017. (Resp. Appx. 21, ¶ 36). Mr. Smyers acknowledges that he discussed the complaints with Mr. McKinney and that was part of the reason for the termination of Ms. Sherrod. (Def. App. 3, ¶¶ 19-20).

Mr. McKinney had hired Ms. Sherrod and she would not have been terminated without his knowledge and approval. (Resp. Appx. 21, ¶ 37). His practice was to be involved in all major decisions involving executives. (Resp. Appx. 21-22, ¶ 37). Mr. Smyers fired Ms. Sherrod the day after she met with Mr. McKinney and informed him of her intention to file an EEOC charge. (Def. App. 3, ¶¶ 19-20). A reasonable jury may infer from these facts that Mr. McKinney's conversation with Mr. Smyers about complaints made by Ms. Sherrod would have included her efforts to instigate an EEOC investigation.[1]

---

[1] United Way admits the *prima facie* case for ERISA retaliation for the purposes of the motion and does not raise the issue of Mr. Smyer's knowledge. Nevertheless, Mr. Smyers knew that Ms. Sherrod had reported ERISA violations. (Resp. Appx. 25, ¶ 51).

### G.   A jury could find United Way negligent in preventing discrimination and retaliation.

An employer may be found negligent if it failed to prevent retaliation in the workplace where it did not monitor the situation, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints. *Vance v. Ball State Univ.*, 570 U.S. 421, 448-49 (2013). Mr. McKinney was President and CEO at the time of Ms. Sherrod's termination. (Resp. Appx. 25, ¶ 52). Ms. Sherrod observed that Mr. McKinney and Mr. Smyers interacted on a daily basis regarding daily decisions. (Resp. Appx. 22, ¶ 38). Mrs. Smyers was being mentored by Mr. McKinney to become the CEO. (Resp. Appx. 22, ¶ 38). If Mr. McKinney omitted Ms. Sherrod's contact with the Fort Worth Human Relations Unit (EEOC), then a reasonable jury could find that the omission was negligence on the part of United Way to prevent discrimination and retaliation. *See id.*

Further, a reasonably jury could believe that Mr. McKinney was actually involved in the termination decision. Mr. McKinney had hired Ms. Sherrod and she would not have been terminated without his knowledge and approval. (Resp. Appx. 21-22, ¶ 37). His practice was to be involved in all major decisions involving executives. (Resp. Appx. 22, ¶ 37).

### H.   Rule 56(d) requires a denial or delay of the motion.

Alternatively, the motion for summary judgment should be denied or delayed under Federal Rule of Civil Procedure 56(d) because United Way has not provided relevant discovery responses. United Way has agreed to provide documents responsive to discovery requests in response to a motion to compel but has yet to

provide them. Additionally, a motion to compel on remaining issues is pending. (ECF No. 33). The motion may denied for these reasons, as well.

WHEREFORE, Ms. Sherrod requests that the Court deny United Way's motion for summary judgment.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David B. Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF
CONEISHA SHERROD**

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.

*/s/ Brian P. Sanford*